IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DENNIS ROBERTS, | : |
| | : Civil Action File No. |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| WILLARD WRECKER | : |
| SERVICE, INC., and JIMMY | : |
| WILLARD, | : |
| | : |
| Defendants. | |

**COMPLAINT**

Plaintiff Dennis Roberts ("Roberts") brings this Complaint against Defendants Willard Wrecker Service, Inc. ("Willard Wrecker") and Jimmy Willard ("Jimmy Willard") (collectively "Defendants") and show the Court as follows:

**INTRODUCTION**

1.

This is a wage and hour case.

2.

Defendants employed Roberts as a tow truck driver from in or about June 2021 through November 3, 2022 (hereinafter the "Relevant Time Period"). Defendants misclassified Roberts as an independent contractor and failed to compensate him statutory overtime wages throughout his employment as required by the Fair Labor Standards Act.

1

**(a) Jurisdiction and Venue**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Willard Wrecker has two locations located within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**(b) The Parties**

5.

Roberts resides in Lamar County, Georgia.

6.

Willard Wrecker employed Roberts as a tow truck driver from approximately June 2021 through November 3, 2022.

7.

At all times during the Relevant Time Period, Roberts was an "employee" of Willard Wrecker with the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

8.

Willard Wrecker is a domestic for-profit corporation organized under the laws of the State of Georgia.

9.

At all times material hereto, Willard Wrecker was an "employer" of Roberts within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

10.

Willard Wrecker is subject to the personal jurisdiction of this Court.

11.

Willard Wrecker may be served with process through its registered agent Jimmy Willard at 719 Shadburn Avenue, Buford, Georgia 30518.

12.

Jimmy Willard resides in Gwinnett County, Georgia.

13.

At all times material hereto, Jimmy Willard was an "employer" of Roberts within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

14.

Jimmy Willard is subject to the personal jurisdiction of this Court.

15.

Jimmy Willard may be served with process at 719 Shadburn Avenue, Buford, Georgia 30518 or wherever he may be located.

**(c) Individual Coverage**

16.

At all times during the Relevant Time Period, Roberts regularly operated tow trucks owned by Defendants for the purpose of providing towing services for the operators and owners of disabled or abandoned vehicles on Interstate and U.S. Highways, thereby keeping the instrumentalities of interstate commerce free from obstructions.

17.

At all times during the Relevant Time Period, Roberts was "engaged in commerce" as an employee of Willard Wrecker within the meaning of the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**(d) Enterprise Coverage:**

18.

At all times during the Relevant Time Period, Willard Wrecker was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

19.

Throughout the Relevant Time Period, Willard Wrecker employed two or more persons who regularly provided roadside services to customers on Interstate and U.S. highways, thereby providing for the free flow of traffic on the national highway system.

20.

Throughout 2021, Willard Wrecker had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

Throughout 2022, Willard Wrecker had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

Throughout the Relevant Time Period, Roberts and other employees of Willard Wrecker handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Willard Wrecker including trucks, gasoline, engine oil, and cellular phones.

23.

Throughout 2021, Willard Wrecker had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

Throughout 2022, Willard Wrecker had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

Throughout 2021, Willard Wrecker had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

Throughout 2022, Willard Wrecker had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

Throughout the Relevant Time Period, Willard Wrecker has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**(e) Statutory Employer**

28.

Throughout the Relevant Time Period, Jimmy Willard was an owner and/or operator of Willard Wrecker.

29.

Throughout the Relevant Time Period, Jimmy Willard exercised operational control over Roberts' work activities.

30.

Throughout the Relevant Time Period, Jimmy Willard was involved in the day-to-day operation of the Willard Wrecker.

31.

Throughout the Relevant Time Period, Willard Wrecker vested Jimmy Willard with supervisory authority over Roberts.

32.

Throughout the Relevant Time Period, Jimmy Willard exercised supervisory authority over Roberts.

33.

Throughout the Relevant Time Period, Jimmy Willard scheduled Roberts' working hours or supervised the scheduling of Roberts' working hours.

34.

Throughout the Relevant Time Period, Jimmy Willard exercised authority and supervision over Roberts' compensation.

35.

Jimmy Willard hired Roberts to perform services on behalf of Willard Wrecker.

36.

Jimmy Willard terminated Roberts' employment with Willard Wrecker.

**(f) Misclassification as an Independent Contractor**

37.

Throughout the Relevant Time Period, Willard Wrecker classified Roberts as an independent contractor.

38.

Throughout the Relevant Time Period, Roberts was economically dependent on Willard Wrecker for his livelihood.

39.

Throughout the Relevant Time Period, Willard Wrecker exercised control over the time that Roberts worked.

40.

Throughout the Relevant Time Period, Willard Wrecker exercised control over the manner in which Roberts worked.

41.

Throughout the Relevant Time Period, Roberts did not solicit customers on his own behalf.

42.

Throughout the Relevant Time Period, all of Roberts' efforts were directed at serving the customers, employees and agents of Willard Wrecker.

43.

Throughout the Relevant Time Period, Willard Wrecker provided Roberts with all equipment necessary to perform his job duties as a tow truck driver, including, but not limited to, a tow truck.

44.

Throughout the Relevant Time Period, Roberts did not advertise on his own behalf in connection with the type of services he performed for Willard Wrecker.

45.

Throughout the Relevant Time Period, Roberts did not make any significant investments into his work such that he shared any significant risk of loss.

46.

Throughout the Relevant Time Period, Willard Wrecker bore all costs associated with advertising, marketing, and promoting the business of Willard Wrecker.

47.

Throughout the Relevant Time Period, Roberts did not exercise independent business judgment in connection with his work for Willard Wrecker.

48.

Throughout the Relevant Time Period, Willard Wrecker did not permit Roberts to subcontract out his work or hire employees to perform his job duties.

49.

Throughout the Relevant Time Period, Willard Wrecker negotiated contracts for the clients that Roberts served without input or direction from Roberts.

50.

Throughout the Relevant Time Period Roberts's opportunity for profit or loss did not depend on Roberts' managerial skill.

51.

Throughout the Relevant Time Period, the work that Roberts performed for Willard Wrecker did not require a special skill.

52.

Throughout the Relevant Time Period, Roberts worked for Willard Wrecker on a consistent and full-time basis.

53.

Throughout the Relevant Time Period, Willard Wrecker provided Roberts with job assignments and locations.

54.

Throughout the Relevant Time Period, Willard Wrecker' sole business was providing towing and road side assistance to its customers.

55.

Throughout the Relevant Time Period, the work performed by Roberts was an integral part of Willard Wrecker's business.

56.

Throughout the Relevant Time Period, Willard Wrecker classified Roberts as an independent contractor.

57.

Throughout the Relevant Time Period, Willard Wrecker misclassified Roberts as an independent contractor.

58.

Throughout the Relevant Time Period, Roberts was an "employee" of Willard Wrecker within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

59.

Throughout the Relevant Time Period, Willard Wrecker was an "employer" of Roberts within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

**(g) Lack of Exemption**

60.

Throughout the Relevant Time Period, Roberts was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

61.

Throughout the Relevant Time Period, Willard Wrecker did not employ Roberts in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

62.

Throughout the Relevant Time Period, Willard Wrecker did not employ Roberts in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

63.

Throughout the Relevant Time Period, Willard Wrecker did not employ Roberts in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

64.

Throughout the Relevant Time Period, Roberts did not supervise two or more employees.

65.

Throughout the Relevant Time Period, Willard Wrecker did not employ Roberts in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

66.

Throughout the Relevant Time Period, Roberts was not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption (29 U.S.C. § 213(b)(1)).

67.

During the Relevant Time Period, Roberts did not possess a commercial driver's license.

68.

Throughout the Relevant Time Period, Roberts normally operated a flatbed tow truck in his performance of work on behalf of Defendants.

69.

Throughout the Relevant Time Period, Roberts did not travel outside of the State of Georgia in the performance of his duties for Willard Wrecker.

70.

Throughout the Relevant Time Period, Roberts did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act (49 U.S.C.A. § 31132(1)).

### (h) Additional Factual Allegations

71.

Throughout the Relevant Time Period, Defendants compensated Roberts on a per shift basis.

72.

Throughout the Relevant Time Period, Defendants compensated Roberts at a rate of $200 for each day shift he worked, Monday through Friday.

73.

Throughout the Relevant Time Period, Defendants compensated Roberts at a rate of $225 for each night shift he worked, Monday through Friday.

74.

Throughout the Relevant Time Period, Defendants compensated Roberts at a rate of $225 for each shift he worked Saturday and Sunday, regardless of whether he worked a day shift or a night shift.

75.

Throughout the Relevant Time Period, Defendants scheduled Roberts to work an alternating schedule of ten (10) shifts one week and eight (8) shifts the next week.

76.

Throughout the Relevant Time Period, Defendants scheduled Roberts to work 12 hours during each work shift.

77.

Notwithstanding the scheduling identified in paragraphs 75 and 76, *supra*, throughout the Relevant Time Period, Roberts frequently worked in excess of 12 hours during a work shift.

78.

Throughout the Relevant Time Period, Roberts usually worked at least 120 hours during each work week wherein he worked 10 shifts.

79.

Throughout the Relevant Time Period, Roberts usually worked at least 96 hours during each work week wherein he worked 8 shifts.

80.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Roberts worked performing tow services.

81.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA applied to Roberts.

82.

Throughout the Relevant Time Period, Defendants knew or should have known that Roberts was entitled to FLSA overtime protections.

83.

Section 7 of the FLSA, 29 U.S.C. § 207, requires that Defendants compensate Roberts at a rate of one–and–one–half times his regular rate for all time worked in excess of forty (40) hours in a work week.

84.

Throughout the Relevant Time Period, Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants pay Roberts a premium for all hours worked above forty (40) hours in a given workweek.

85.

Throughout the Relevant Time Period, Defendants failed to compensate Roberts at one and one-half of his regular rate for each hour he worked in excess of forty hours in each week.

86.

Throughout the Relevant Time Period, Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Roberts a premium for all time worked in excess of forty hours in a given workweek.

87.

Throughout the Relevant Time Period, Roberts regularly worked more than forty (40) hours during a given workweek.

88.

Throughout the Relevant Time Period, Defendants willfully failed to pay Roberts at one-and-one-half times his regular hourly rate for all time he worked in excess of forty (40) hours in any and all workweeks.

## COUNT I - FAILURE TO PAY OVERTIME

89.

The allegations in paragraphs 1-88 above are incorporated by reference.

90.

Throughout the Relevant Time Period, Roberts was an employee covered by the FLSA and entitled to the overtime protections within the meaning of FLSA § 7(a), 29 U.S.C. § 207(a).

91.

Throughout the Relevant Time Period, Roberts regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

92.

Throughout the Relevant Time Period, Defendants failed to pay Roberts at one-and-one-half times his regular rate for time worked in excess of forty (40) hours during each work week.

93.

Throughout the Relevant Time Period, Defendants willfully failed to pay Roberts at one–and–one–half times his regular rate for work in excess of forty (40) hours in any week.

94.

Roberts is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

95.

As a result of the underpayment of overtime compensation as alleged above, Roberts is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

96.

As a result of the underpayment of overtime compensation as alleged above, Roberts is entitled to his litigation costs, including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Roberts respectfully prays:

(a) That his claims be tried before a jury;

(b) That he be awarded all due but unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally;

(c) That he be awarded an additional like amount in liquidated damages; against Defendants, jointly and severally;

(d) That he be awarded his costs of litigation, including his reasonable attorneys' fees from Defendants, jointly and severally;

(e) That he be awarded nominal damages; and

(f) For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

101 MARIETTA STREET
SUITE 2650
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 (f)
Michaelcaldwell@dcbflegal.com
benjamin@dcbflegal.com

/s/ MICHAEL A. CALDWELL
MICHAEL A. CALDWELL
GA. BAR NO. 102775

/s/ MITCHELL D. BENJAMIN
MITCHELL D. BENJAMIN
GA. BAR NO. 049888